UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANTONIO ANDRE COLBERT,

       Petitioner,

                                   Case No. 15-10167

v.                                   Honorable Arthur J. Tarnow

CATHLEEN STODDARD,

       Respondent.

_____/

## OPINION AND ORDER
## DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
## DENYING A CERTIFICATE OF APPEALABILITY,
## AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Antonio Andre Colbert, a state prisoner at the Carson City

Correctional Facility in Carson City, Michigan, has filed a *pro se* petition for the

writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges

Petitioner's convictions and sentence of ten to fifteen years for two counts of third-

degree criminal sexual conduct. *See* Mich. Comp. Laws § 750.520d(1)(a) (sexual

penetration of a person at least thirteen years old, but less than sixteen years old).

Petitioner's six grounds for relief challenge (1) an amendment to the criminal

information, (2) a witness's testimony regarding Petitioner's other acts of criminal

sexual conduct, (3) the trial court's denial of his motion for a mistrial, (4) the trial

court's jury instruction on the criminal-sexual-conduct charges, (5) the trial court's

denial of his motion for new trial, and (6) the trial court's scoring of offense variable 13 of the Michigan sentencing guidelines. The State urges the Court to deny the petition on grounds that Petitioner's claims are meritless or not cognizable on habeas review and that the state courts' decisions were not contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. The Court agrees with the State's position on Petitioner's claims. Accordingly, the petition will be denied.

## I. Background

Petitioner initially was charged in Macomb County, Michigan with two counts of first-degree criminal sexual conduct under Mich. Comp. Laws § 750.520b(1)(c ) (sexual penetration of an individual during the commission of another felony), one count of kidnapping, Mich. Comp. Laws § 750.349, and driving while license suspended, second offense, Mich. Comp. Laws § 257.904(1). On the day set for trial in Macomb County Circuit Court, Petitioner pleaded guilty to the driving offense, and the prosecutor moved to amend the criminal information to include two counts of third-degree criminal sexual conduct (sexual penetration of an individual thirteen, fourteen, or fifteen years of age). The prosecutor asked to have the third-degree charges listed as separate charges, not alternative counts, to the first-degree charges. Defense counsel objected to the motion on the basis of

the late notice, but the trial court granted the prosecutor's motion, and the case proceeded to trial on two counts of first-degree criminal sexual conduct, one count of kidnapping, and two counts of third-degree criminal sexual conduct.

The first prosecution witness was complainant, who testified that, on June 8, 2011, she was fourteen years old and an eighth-grader at Lincoln Middle School in Warren, Michigan. Previously, she had gotten into trouble for frequently being late to school, and on June 8, 2011, she missed the bus to school because she could not find a book bag. As she was walking to school later that morning, Petitioner approached her in a white minivan and asked if he could talk to her. She looked at him, but kept walking because she did not know him. As she crossed the street, she saw Petitioner a second time. He asked her what her name and age were and where she went to school. She told him that she was fourteen years old and that she attended Lincoln School. Petitioner subsequently got out of his vehicle, grabbed her, and put her in the passenger seat of his vehicle. She did not try to get out of the vehicle because she was scared and she did not want to risk her life if he had a weapon. Petitioner then drove to a side street and stopped in front of a house where he picked her up and placed her in the back of his vehicle. He took off her clothes, put her hands over her head so that she could not move, grabbed her throat, and put his penis in her vagina. She cried, but Petitioner kissed her and put

his penis in her vagina a second time. Later, Petitioner got back in the front seat of the vehicle and asked a passerby what time it was. He then took her to school and told her not to tell anyone about the incident because his little sister attended the school and he would know if the complainant had reported the incident. The complainant, nevertheless, walked into the school and told a teacher that she had been raped. She also informed a police officer what had happened.

At trial, the complainant stated that she had told school officials the truth and that she did not fabricate the incident as an excuse for being late for school. On cross examination, however, she admitted that school officials had warned her the day before the incident with Petitioner that, if she were late again, she or her mother could be charged with truancy.

Forensic scientist Melinda Jackson testified that she detected the presence of semen on vaginal and anal swabs that were presented to her and that she sent the swabs to a laboratory for DNA analysis. Brian Schloff analyzed those swabs and buccal swabs taken from Petitioner and the complainant. He determined that the sperm fraction of the DNA found on the vaginal and anal swabs taken from the complainant matched Petitioner. The likelihood that the DNA belonged to anyone besides Petitioner was in the quintillions.

Jason Scholz testified that, on June 8, 2011, he was a school resource officer for the Van Dyke Public School District. After the assistant principal at Lincoln Middle School informed him about a possible rape of a student, he spoke with the complainant who was crying and upset. The complainant claimed that she had been sexually assaulted on her way to school that day. The complainant described her assailant, the man's vehicle, and where the assault occurred. When Officer Scholz checked the school surveillance videos, he saw the vehicle pull into the parking lot and the complainant get out of the vehicle. He handed a photograph of the vehicle to Officer Pylak and instructed Pylak to check for the vehicle later that day in case someone arrived at the school in the same vehicle to pick up someone at the elementary school. After students at the elementary school were released for the day, police officer Sciullo made a traffic stop involving the suspect vehicle. Officer Scholz responded to the scene and saw Petitioner in the driver's seat of the vehicle. Petitioner was wearing clothing similar to what had been described to Officer Scholz.

Police Officer Ryan Pylak of the Warren Police Department testified that Officer Scholz had contacted him on June 8, 2011, and described a person of interest and a vehicle possibly involved in a sex crime. He (Pylak) was told that

the suspect might return to the school to pick up his little sister.  He forwarded this information and a photograph of the vehicle to Officer Sciullo.

Police officer Timothy Sciullo testified that, after acquiring information from Officer Pylak, he eventually saw the vehicle in question.  He stopped the vehicle, and with the help of another officer, he arrested the driver of the vehicle, who matched the description that Sciullo had been given.  Petitioner was the driver, but he was unable to produce a driver's license or vehicle registration card.

Gail Lippert testified that she was the sexual assault nurse examiner who examined the complainant.  The complainant was soft-spoken, somewhat withdrawn, and slow to respond to some questions, but according to Ms. Lippert, this type of response can be expected from someone who had just experienced a traumatic event.  The complainant described what had happened to her, and even though Ms. Lippert saw no injuries, the complainant indicated that there was some tenderness or soreness on her genitalia.

Police officer Mark Smith testified that he was an evidence technician for the Warren Police Department and that, on June 8, 2011, he executed a search warrant on a white minivan.  He identified photographs that he took of the interior and exterior of the vehicle.  One of the photographs depicted the contents of a backpack found in the vehicle.  He did not find any fingerprints on the vehicle.

The final prosecution witness was NB who testified about an incident that occurred in Wayne County, Michigan in 2010 when she was fifteen years old.[1] She testified that when she first saw Petitioner on the day in question, he was with two other people. He approached her and asked her whether she want to "chill" with him. When she responded that she did want to be with him, but not with the other two people in the vehicle, Petitioner dropped off his friends and returned for her in his van. She got in his vehicle and went to his house where they watched a movie and had sex. Afterward, they went to a McDonald's restaurant and then back to Petitioner's house. Petitioner's two friends were there, but she and Petitioner went upstairs and started watching a movie. Petitioner went downstairs when someone called him. He came back upstairs, and they had sex again, but he started to choke her when his light-skinned friend came into the room and tried to have oral sex with her as Petitioner was penetrating her from behind. Petitioner left the room, but then a dark-skinned boy came in the room and held her down on the bed. She tried fighting the two boys, but both of them managed to penetrate her. When they finally left the room, she was able to get dressed and leave the house.

---

[1] The Court is referring to the witness by her initials because of the nature of her testimony and because she was a minor at the time of the incident that she described to the jury.

NB admitted at trial that she willingly went with Petitioner and had sex with him and that she did not report the rapes to the police until three weeks after the incident with Petitioner and his friends. She also admitted that she did not appear in court when given an opportunity to testify against Petitioner and that she currently was facing a charge of armed robbery. However, she denied fabricating the incident, and she claimed that nobody had offered her a deal or promised her anything in her armed robbery case in return for her testimony against Petitioner.

Petitioner did not testify, and the only defense witness was retired police officer Robert Krist, who testified that he was the former officer in charge of the case and that he interviewed the complainant on the day after the assault. Defense counsel was permitted to treat Mr. Krist as an adverse witness, and he attempted to impeach Krist with inconsistencies in the complainant's statements to Krist and Officer Scholz. But Krist's testimony about his and Officer Scholz' interviews with the complainant tended to confirm what the complainant had said at trial.

The prosecutor maintained during closing arguments that Petitioner was guilty, as charged, of all five charges against him. Petitioner's defense was that the complainant and NB were liars and troubled girls who sought out older men. Defense counsel argued to the jury that the complainant made up her version of the facts to avoid being taken into custody for her tardiness at school on June 8, 2011,

and that NB was blaming Petitioner for what happened to her in 2010. Defense counsel maintained that the prosecution had failed to prove its case beyond a reasonable doubt because there was a lack of corroborating evidence.

On February 9, 2012, the jury acquitted Petitioner of first-degree criminal sexual conduct and kidnapping, but found him guilty of two counts of third-degree criminal sexual conduct. On March 15, 2012, the trial court sentenced Petitioner to prison for two concurrent terms of 120 to 180 months (ten to fifteen years). Petitioner moved for a new trial, but the trial court denied his motion.

Petitioner raised his habeas claims in an appeal as of right. The Michigan Court of Appeals affirmed his convictions and sentences, but remanded his case to the trial court to correct an error in the pre-sentence investigation report. *See People v. Colbert*, No. 310813 (Mich. Ct. App. Oct. 15, 2013). On April 28, 2014, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it. *See People v. Colbert*, 495 Mich. 991; 845 N.W.2d 108 (2014).[2]

On January 14, 2015, Petitioner filed his habeas petition. The State filed an answer to the petition, and Petitioner filed a reply.

---

[2] Justice David V. Viviano did not participate in the case due to a familial relationship with the presiding circuit court judge in the case.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an
>        unreasonable application of, clearly established Federal
>        law, as determined by the Supreme Court of the United
>        States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>        determination of the facts in light of the evidence
>        presented in the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of

state court factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts.  *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application occurs" when

"a state-court decision unreasonably applies the law of [the Supreme Court] to the

facts of a prisoner's case."  *Id.* at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.

## III.  Analysis

## A.  Amendment of the Criminal Information

Petitioner alleges first that the trial court abused its discretion by permitting the prosecutor to amend the criminal information at trial to add two counts of criminal sexual conduct in the third degree.  Petitioner contends that there was no justification or excuse for the late amendment and that it unfairly surprised and prejudiced him because he had planned to defend against the prosecutor's theory that the criminal sexual conduct occurred during a kidnapping.   The Michigan Court of Appeals determined on review of this claim that the amendment did not result in unfair surprise, inadequate notice, or an insufficient opportunity to defend and that the trial court did not abuse its discretion in granting the motion to amend.

### 1.  Legal Framework

In Michigan, the document known as a criminal information "advise[s] an accused of the offense with which he is charged." *People v. Gould*, 237 Mich. 156, 164; 211 N.W.2d 346, 348 (1926).  Before, during, or after trial, a trial court "may permit the prosecutor to amend the information . . . unless the proposed

amendment would unfairly surprise or prejudice the defendant."  Mich. Ct. R.

6.112(H); *see also* Mich. Comp. Laws Ann. § 767.76 ("The court may at any time

before, during or after the trial amend the indictment in respect to any defect,

imperfection or omission in form or substance or of any variance with the

evidence.").   Furthermore, when, as initially argued here, the gravamen of the

petitioner's claim is that state law was violated by amendment of the information,

the claim is not cognizable in a habeas corpus proceeding.  *King v. Girubino*, 538

F. Supp.2d 1269, 1271, 1278-79 (C.D. Cal. 2008).

But the Sixth Amendment to the United States Constitution provides that,

"[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed

of the nature and cause of the accusation."  U.S. CONST., amend. VI.  Petitioner

also had a constitutional right to "a meaningful opportunity to present a complete

defense."  *California v. Trombetta*, 467 U.S. 479, 485 (1984).

> The due process clause of the Fourteenth Amendment mandates that
> whatever charging method the state employs must give the criminal
> defendant fair notice of the charges against him to permit adequate
> preparation of his defense.  *In Re Ruffalo*, 390 U.S. 544, 88 S.Ct.
> 1222, 20 L.Ed.2d 117 (1968); *Blake v. Morford*, 563 F.2d 248 (6th
> Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This
> requires that the offense be described with some precision and
> certainty so as to apprise the accused of the crime with which he
> stands charged.  Such definiteness and certainty are required as will
> enable a presumptively innocent man to prepare for trial.  *Combs v.
> Tennessee*, 530 F.2d [695, 698 (6th Cir. 1976)].

*Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

## 2. Application

The amendment in this case added two counts of third-degree criminal sexual conduct to the information. This crime requires the prosecutor to prove that the defendant penetrated someone thirteen, fourteen, or fifteen years of age for a sexual purpose. Mich. Comp. Laws § 750.520d(1)(a); *People v. Hunt,* 442 Mich. 359, 364; 501 N.W.2d 151, 154 (1993).

Defense counsel was present at Petitioner's preliminary examination where the complainant testified that, on June 8, 2011, Petitioner put his penis in her vagina two times and she was fourteen years old at the time. (7/26/11 Prelim. Examination Tr. at 3-19.) The police reports also included the complainant's allegations and age. (1/31/12 Trial Tr. at 6.) Furthermore, on more than one occasion, defense counsel suggested to the assigned prosecutor that she offer Petitioner an opportunity to plead guilty to third-degree criminal sexual conduct. (*Id*. at 9-10). And the prosecutor sent the DNA analysis to defense counsel on December 28, 2011, or more than a month before trial. (4/26/12 Mot. Hr'g Tr. at 29.)

Although the prosecutor did not inform defense counsel of her intent to charge Petitioner with third-degree criminal sexual conduct until trial, defense

counsel knew all the relevant facts needed to prove the elements of third-degree criminal sexual conduct at least a month before trial. And because he previously had suggested to the prosecutor that Petitioner should be permitted to plead guilty to third-degree criminal sexual conduct, he had reason to believe that the prosecutor would charge Petitioner with that offense. He could not have been unfairly surprised or prejudiced when the prosecutor actually charged Petitioner with the offense, because he had suggested that Petitioner was guilty of the offense and because state law allows amendments to the information during trial.

To conclude, the amendment to the criminal information did not deprive Petitioner of his right to notice of the charges or an opportunity to defend himself. Therefore, he has no right to relief on his claim.

## B. Other Acts Evidence

Petitioner alleges next that the trial court abused its discretion by allowing NB to testify about Petitioner's sexual penetration of her in Wayne County in 2010 when she was fifteen years old. Petitioner claims that the evidence was admitted in violation of Michigan Rule of Evidence 404(b) to show that he had a propensity to commit crimes and that he acted in conformity with this propensity during the incident with the complainant on June 8, 2011. The Michigan Court of Appeals

held on review of this issue that the trial court did not abuse its discretion by admitting the evidence.

### 1. Legal Framework

"[E]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, [usually may not] be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). "Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause," *Wilson v. Sheldon*, __ F.3d __, __, No. 16-3981, 2017 WL 4820300, at *3 (6th Cir. Oct. 26, 2017) (citing *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000)), and "[t]o the extent that any testimony and comments violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review." *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

A state trial court's evidentiary error can rise to the level of a federal constitutional claim warranting habeas corpus relief if the error was "so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004)

(citing *McGuire*, 502 U.S. at 69-70). In Michigan, however, when a defendant is accused of committing criminal sexual conduct against someone less than eighteen years of age, the prosecutor may introduce evidence that the defendant committed criminal sexual conduct against another minor, and the evidence may be admitted for any relevant purpose. Mich. Comp. Laws § 768.27a; *People v. Watkins*, 491 Mich. 450, 455, 471; 818 N.W.2d 296, 298-99, 307 (2012). The only restriction on the use of such evidence is that the danger of unfair prejudice must not outweigh the probative value of the evidence. *Watkins,* 491 Mich. at 456; 818 N.W.2d at 299 (citing the balancing test found in Mich. R. Evid. 403).

## 2. Application

The Michigan Court of Appeals correctly pointed out on review of Petitioner's claim that there were considerations weighing both in favor of and against admission of the other acts evidence.

> The other act was similar to the charged crime in that defendant approached both girls in his white van, the girls were 14 and 15 years old, defendant had sexual intercourse with each twice, and defendant choked or grabbed both of their necks. However, there were also substantial differences between the acts. The sexual intercourse between defendant and NB was initially consensual, defendant and NB went back to defendant's house, and there were other individuals involved in the alleged assault. Contrarily, according to the victim in this case, the sexual intercourse was not consensual, the act took place in defendant's van, and there were no other individuals involved.

*Colbert*, 2013 WL 5629639, at *2.  Also, there were no intervening acts in the complainant's case.  *Id.*

The Michigan Court of Appeals went on to conclude that it was a close question as to whether the probative value of the evidence was outweighed by the danger of unfair prejudice.  The Court of Appeals noted that "[t]here was a need for evidence beyond the victim's testimony because the victim's credibility was questioned," but "NB's testimony was questionable because she did not appear to testify in the case against [Petitioner] and she was facing charges for armed robbery."  *Id.*  Additionally, "[a]ccording to [Petitioner], the evidence affected his decision to testify and forced him to defend the Wayne County case," even though he "was not convicted of the other acts."  *Id.*  Because it was a close question, however, the Court of Appeals ruled that the trial court's decision did not constitute an abuse of discretion.

On habeas review, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  "[E]ven a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Id*. at 102.  This is particularly true here for a few reasons.

First, the prosecutor presented the "other acts" evidence, in part, to show Petitioner's *modus operandi*.  (2/8/12 Trial Tr. at 34, 50.)  This is a proper use of "other acts" evidence.  *See United States v. Perry*, 438 F.3d 632, 648 (6th Cir. 2006) (stating that, because two crimes of sufficient similarity can create a pattern or *modus operandi,* the district court admitted evidence of a similar act for a proper purpose).

Second, defense counsel was able to thoroughly cross-examine NB and attack her credibility in his closing argument to the jury.  Third, the trial court charged the jurors not to let sympathy or prejudice influence their decision.  (2/8/12 Trial Tr. at 116.)

Finally, the trial court gave a specific jury instruction on evidence that Petitioner had committed a crime for which he was not on trial.  The trial court instructed the jurors to think about whether this evidence tended to show Petitioner's criminal sexual behavior towards minors.  The court charged the jurors not to consider the evidence for any other purpose, such as whether he was likely to commit crimes, and not to convict Petitioner because they thought he was guilty of other bad conduct.  (*Id*. at 123.)   A trial court does not abuse its discretion by

admitting "other acts" evidence when the court gives the jury an appropriate limiting instruction. *Perry*, 438 F.3d at 649.

The Court concludes that the trial court's decision to allow NB to testify about her encounter with Petitioner and his friends was not so fundamentally unfair as to deprive Petitioner of a fair trial. And the state appellate court's decision upholding the trial court's ruling was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.

Even if the state trial court erred in admitting NB's testimony, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Petitioner cites *Huddleston v. United States*, 485 U.S. 681 (1988), in his reply brief and argues that district courts must apply four evidentiary safeguards when addressing the admissibility of "other acts" evidence. But the Supreme Court did not explicitly address the issue of "other acts" evidence in constitutional terms. *Bugh*, 329 F.3d at 513. Therefore, the state appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, any Supreme Court decision under § 2254 (d)(1), and Petitioner has no right to relief on the basis of his evidentiary claim.

## C. Denial of the Motion for Mistrial

In his third habeas claim, Petitioner asserts that the trial court abused its discretion when it denied his motion for a mistrial, which was based on the prosecutor showing excluded evidence to the jury.  The disputed evidence consisted of a photograph of a magazine found in a backpack taken from Petitioner's minivan during a search of the vehicle.  The cover of the magazine bore the following caption:  "Steamy Sex Games, 118 exotic cards equals lots of hot scenarios and all sorts of naughty things to do with your lover."  In the jury's absence, the prosecutor made an oral motion in limine to admit a picture of the magazine, but the trial court ruled that the prosecutor could not admit the evidence because it did not prove an element of the crimes and because the evidence was more prejudicial than probative.  The prosecutor then agreed to redact or to exclude the questionable photograph from the set of photographs she planned to show to the jury.  (2/3/12 Trial Tr. at 135-40).

Evidence technician Mark Smith subsequently testified about photographs that he took of Petitioner's minivan during his investigation of the case.  As the prosecutor displayed the photographs to the jury in a slide presentation, Mr. Smith explained what the photographs depicted.  He noted that one of the photographs showed the contents of the book bag found in Petitioner's minivan.  (*Id*. at 151-53.)

After Mr. Smith testified, defense counsel pointed out in the jury's absence that the prosecutor had shown a photograph of the disputed magazine to the jury while Smith testified. The prosecutor admitted that she had inadvertently showed the photograph to the jury, but defense counsel moved for a mistrial on grounds that the prosecutor had violated the trial court's evidentiary ruling and that the photograph was prejudicial. The trial court denied defense counsel's motion, but offered to read a cautionary instruction to the jury. (*Id*. at 168-72; 2/7/12 Trial Tr. at 21). Defense counsel declined the offer of a cautionary jury instruction because he thought that it would draw more attention to the evidence and make matters worse. (2/8/12 Trial Tr. at 114.)

### 1. Clearly Established Federal Law

A trial judge's decision to declare a mistrial is entitled to great deference. *Arizona v. Washington*, 434 U.S. 497, 514 (1978). But

> a constitutionally protected interest is inevitably affected by any mistrial decision. The trial judge, therefore, "must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." In order to ensure that this interest is adequately protected, reviewing courts have an obligation to satisfy themselves that . . . the trial judge exercised "sound discretion" in declaring a mistrial.

> Thus, if a trial judge acts irrationally or irresponsibly, his action cannot be condoned.

*Id.* (internal citations omitted).

## 2. Application

On direct appeal, Petitioner raised his claim under *People v. Spencer*, 130

Mich. App. 527; 343 N.W.2d 607 (1983), which states that,

> where error and mistake are egregious, the trial court maintains a duty
> upon proper motion to declare a mistrial in order to control the trial
> and to protect the rights of the defendant. The test to be used in
> determining whether a mistrial should be declared is not whether there
> were some irregularities but whether defendant had a fair and
> impartial trial.
>                 . . . .
>
> Denial of a mistrial motion is within the sound discretion of the trial
> judge and will not be reversed by this Court unless such denial
> constituted an abuse of discretion. *People v. Robertson,* 87 Mich.
> App. 109, 273 N.W.2d 501 (1978); *People v. Denmark,* 74 Mich.
> App. 402, 254 N.W.2d 61 (1977). In order to find reversible error, the
> trial court's denial of defendant's mistrial motion must be found to
> have deprived defendant of a fair trial and to have resulted in a
> miscarriage of justice. *People v. Ritholz,* 359 Mich. 539, 559, 103
> N.W.2d 481 (1960); M.C.L. § 769.26; M.S.A. § 28.1096.

*Id.*, 130 Mich. App. at 540-41; 343 N.W.2d at 613–14.

The alleged violation of this test and standard is not a basis for habeas relief

because a federal habeas court is limited to deciding whether a conviction violated

the Constitution, laws, or treaties of the United States." *McGuire*, 502 U.S. at 68.

And even though Petitioner argues in his reply brief, that he had a constitutional

right to a fair trial, the Michigan Court determined that the prosecutor's error did

not prejudice Petitioner or deny him a fair trial. The Court of Appeals opined that the trial court's decision to deny Petitioner's motion for a mistrial was within the range of principled outcomes.

This conclusion was objectively reasonable because, even though defense counsel, maintained that the jurors saw the disputed photograph and the words "Steamy Sex Games," the prosecutor stated that the picture was visible for only "half a second." (2/3/12 Trial Tr. at 169-71.) Neither the officer in charge of the case, nor the trial court, saw the picture. (*Id*. at 170, 172.) And, as the Michigan Court of Appeals pointed out, there was overwhelming evidence of third-degree criminal sexual conduct, given the complainant's testimony and the DNA results.

The Court concludes that the photograph in question did not deprive Petitioner of his constitutional right to a fair trial, and the trial court did not abuse its discretion or act irrationally or irresponsibly when denying Petitioner's motion for a mistrial. Therefore, habeas relief is not warranted on Petitioner's claim.

## D. The Trial Court's Jury Instructions

Petitioner contends that the trial court's instruction to the jury on the criminal-sexual-conduct charges was so erroneous, misleading, and confusing as to deny him a fair trial and due process of law. The Michigan Court of Appeals

disagreed with Petitioner and concluded that the trial court's instruction was not erroneous.

### 1. Clearly Established Federal Law

A jury instruction that is incorrect under state law is not a basis for habeas relief. *McGuire*, 502 U.S. at 71-72 (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)). The only question on habeas review of jury instructions is whether the ailing instruction infected the entire trial with such unfairness as to deprive the petitioner of due process. *Id*. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). In other words, "[t]o warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair.' " *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001) (quoting *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000)).

### 2. Application

Petitioner objects to the following instruction, which the trial court read to the jury at the close of the parties' proofs:

> The Defendant is charged with five separate counts, that is, with the crimes of criminal sexual conduct first degree, criminal sexual conduct first degree, kidnapping and criminal sexual conduct third degree and criminal sexual conduct third degree. These are separate crimes and the prosecutor is charging that the defendant committed all of them. You must consider each crime separately in light of all of the evidence in this case.

> You may find the defendant guilty of all or any one or any combination of these crimes or not guilty.

(2/8/12 Trial Tr. at 128-29.)

Petitioner contends that it was reversible error to instruct the jury that it could consider the two counts of criminal sexual conduct in the third degree as separate and additional charges. He argued in state court that, under *People v. Gould*, 241 Mich. App. 333; 615 N.W.2d 794 (2000), the trial court should have instructed the jurors that the two counts of third-degree criminal sexual conduct were alternative counts to the two counts of first-degree criminal sexual conduct.

The Michigan Court of Appeals stated that Petitioner's reliance on *Gould* was misplaced because *Gould* did not involve a prosecution under two separate statutes, as in Petitioner's case. And, under *People v. Garland,* 286 Mich. App. 1; 777 N.W.2d 732 (2009), a defendant may be charged, tried, and convicted of two counts of first-degree criminal sexual conduct and two separate counts of third-degree criminal sexual conduct even though the charges pertain to the same two acts of sexual penetration. The reasons for this conclusion are that each offense is codified in the Michigan Compiled Laws as a separate statute, and each offense contains an element that the other offense does not. *Id*., 286 Mich. App. at 5-6; 777 N.W.2d at 735.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *McGuire*, 502 U.S. at 67–68, and the state court's interpretation of state law binds this Court sitting in habeas corpus, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). The Court, therefore, concludes that the state trial court's jury instruction was not erroneous or so infirm as to render Petitioner's trial unfair. Petitioner has no right to habeas relief on the basis of his challenge to the jury instructions.

## E. Denial of the Motion for New Trial

Petitioner alleges that the trial court committed reversible error when the court denied his motion for new trial. The motion was based on the (1) the prosecutor's amendment of the criminal information to include two counts of criminal sexual conduct in the third degree, (2) the use of "other acts" to show criminal propensity, and (3) the trial court's instructions to the jury that it could consider whether Petitioner was guilty of criminal sexual conduct in the first degree and in the third degree.

The trial court found no merit in Petitioner's argument about the jury instructions because, in the court's opinion, first-degree criminal sexual conduct and third-degree criminal sexual conduct were different offenses for which Petitioner could be separately prosecuted, convicted, and sentenced. The trial

court rejected Petitioner's remaining arguments about the late amendment of the information and the use of "other acts" evidence because the court had previously considered and decided the issues against Petitioner. *See People v. Colbert*, No. 2011-2574-FC, Op. and Order (Macomb Cty. Cir. Ct. May 14, 2012).

On appeal, Petitioner argued that the trial court's decision to deny his motion for new trial was clearly erroneous under Michigan Court Rule 6.431(B), under *People v. English*, 302 Mich. 463; 4 N.W.2d 727 (1942), and under *People v. Grainger*, 117 Mich. App. 740; 324 N.W.2d 762 (1982). The Michigan Court of Appeals determined that the trial court did not abuse its discretion in denying Petitioner's motion for new trial because none of the underlying grounds supported reversal on appeal.

A claim that the state trial court abused its discretion and misapplied state law when denying a petitioner's motion for new trial is not subject to habeas review if it was clearly premised on issues of state law. *Pudelski v. Wilson,* 576 F.3d 595, 610–11 (6th Cir.2009). And "[t]o establish a constitutional due process claim, [a habeas petitioner] must demonstrate that the trial court's denial of his motion for new trial was 'so egregious' that it violated his right to a fundamentally fair trial." *Id*. at 611 (citing *Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009), and *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)).

Petitioner's underlying claims about the amendment to the criminal information, the "other acts" evidence, and the jury instructions lack merit and did not deprive Petitioner of his right to a fair trial for the reasons given above. Therefore, the trial court did not abuse its discretion or violate Petitioner's due process rights by denying his motion for new trial, and habeas relief is not warranted on Petitioner's claim.

## F. The Sentencing Guidelines

Petitioner's sixth and final habeas claim alleges that the trial court abused its discretion when it scored twenty-five points for offense variable thirteen of the Michigan sentencing guidelines. The Michigan Court of Appeals disagreed with Petitioner and concluded that the trial court properly scored offense variable thirteen at twenty-five points.

This Court finds no merit in Petitioner's claim because a challenge to the state court's application and interpretation of state sentencing guidelines is "a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Consequently, Petitioner's claim is not cognizable on habeas review. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson*

*v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). A sentencing claim based on an alleged violation of Michigan law simply fails to state a claim on which habeas relief may be granted. *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000).

Petitioner accurately points out in his reply brief that a trial court may not sentence a defendant on untrue assumptions or on an extensively and materially false foundation. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). In this case, however, the Court finds for the following reasons that the trial court did not rely on untrue assumptions or on extensively and materially false information.

State courts apply offense variable thirteen when determining whether a defendant engaged in a "continuing pattern of criminal behavior." Mich. Comp. Laws § 777.43(a). Twenty-five points is a proper score if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." Mich. Comp. Laws § 777.43(1)(c). "[A]ll crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." Mich. Comp. Laws § 777.43(2)(a).

Petitioner was convicted of two counts of criminal sexual conduct in the 2011 criminal case under consideration here. And NB testified at Petitioner's trial that Petitioner sexually penetrated her two times in 2010 when she was fifteen

years old.  The 2010 incident constituted two additional crimes against a person even though the incident apparently did not result in a conviction against Petitioner.  Thus, Petitioner's offense was part of a pattern of felonious criminal activity involving three or more crimes against a person, and the trial court did not rely on extensively and materially false information when scoring twenty-five points for offense variable thirteen.

Finally, although Petitioner implies that his sentence is invalid because it was based on facts that were not submitted to a jury and proved beyond a reasonable doubt, he made this argument for the first time in his reply brief.  Thus, his argument regarding judicial fact-finding is not properly before the Court, *Murphy v. Ohio*, 551 F.3d 485, 502 (6th Cir. 2009), and the Court need not address it, *Tyler v. Mitchell,* 416 F.3d 500, 504 (6th Cir. 2005).

## IV.  Conclusion and Certificate of Appealability

Petitioner's state-law claims are not cognizable on habeas review, and the state courts' rejection of his constitutional claims did not result in decisions that were contrary to clearly established federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.  The Court, therefore, denies the habeas petition with prejudice.

Petitioner may not appeal this opinion without first obtaining a certificate of appealability, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims. Nor could they conclude that Petitioner's claims deserve encouragement to proceed further. Accordingly, the Court declines to grant a certificate of appealability on any of Petitioner's claims. The Court nevertheless grants Petitioner permission to appeal this decision *in forma pauperis*, because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: December 18, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 18, 2017, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant